ELIZABETH C. GALBREATH v. E. EVERETT, Adm'r.

*Injunction—Jurisdiction.*

1. Under the act of 1879, ch. 63, restraining orders must be made returnable before the judge in the district in which the action is pending. (The amendatory act of 1881, ch. 51, provides that the judge in an adjoining district shall be competent to hear the application under certain circumstances.)

2. An injunction against the sale of land for assets was properly granted on motion of the heirs of the decedent, where the land was advertised under a power contained in an instrument purporting to be a will which was admitted to probate without notice to the heirs and upon insufficient testimony, and the validity of which is in controversy.

APPEAL from an order granting an injunction made at Chambers, in Waynesville, on the 27th of July, 1880, in an action pending in SWAIN Superior Court, by *Gudger, J.*

The circumstances under which the injunction was granted are as follows: The plaintiff began her action on the 23rd of June, 1880, by summons returnable to fall term of said court, and on the 27th she moved for an injunction restraining the defendant from selling certain land, for the reasons set forth in an affidavit filed, the judge (Gudger) being the resident judge of the ninth judicial district, but assigned at the time to the second district. His Honor issued an order directing the defendant to appear before him at Raleigh, in Wake county, on the 14th of July, 1880, and show cause why the injunction asked for should not be granted, and in the meantime restraining him from selling the land. To the foot of this order was added a note to the effect that if the parties so agreed, the hearing of the motion for the injunction would be postponed until the 27th of July, when it would be heard at Waynesville, but if the parties did not so agree, then the papers were to be sent to the judge at Raleigh by the 14th, as first directed. And on

the 14th, as the case states, the affidavits of both plaintiff and defendant being before His Honor at chambers in Raleigh, " the matter was continued under advisement until the 27th day of July, 1880." And on the 27th it was considered at Waynesville, and the injunction of which the defendant complains, was then and there issued. The above statement is necessary to an understanding of the point raised by the defendant's counsel in this court as to the jurisdiction of the judge who made the orders.

As gathered from the affidavits of both parties, the following appear to be the facts of the case: On the 10th of May, 1861, one A. W. Coleman, being about to enter the Confederate army, executed the following instrument—" Know all men by these presents that I, A. W. Coleman, for and in consideration of the natural love and affection which I bear to Laura Jane Cooper, daughter of Winnie Cooper, do give, grant, convey and confirm unto the said Laura Jane Cooper two thousand dollars in cash, to be made out of my land and other properties at my death, in case I should be killed, or die, while in the service of the Confederate States. But if I should live until my time for which I have volunteered expires, and return home, then in that case, the above gift, grant and confirmation is to be null and void and of no effect." (Signed by A. W. Coleman, on May 10th, 1861.) Coleman died in 1862, before the expiration of his term of service, unmarried, leaving as his heirs at law a brother and three sisters, the plaintiff being one of the latter. He died seized of the land in controversy situate in Swain county; and in the year following, Mark Coleman, his father, qualified as his administrator, but taking no notice of the above instrument of May 10th, until February, 1876 when he offered the same for probate before the clerk as probate judge of said county, who made the following order: " It appearing to the satisfaction of the court from the testimony of Mark Coleman, J. A. Thompson, Charles Jenkins,

and Ute Sherrill, (said testimony being in writing and on file in this office) that the said paper writing purporting to be the last will and testament of A. W. Coleman, deceased, is in the proper handwriting of the said A. W. Coleman, deceased, it is therefore ordered that the said paper writing and every part thereof is the act and deed of the said A. W. Coleman and is his last will and testament." The administrator, Mark Coleman, died in 1879, when the defendant qualified as his administrator and also as the administrator with the will annexed of A. W. Coleman. Under the power supposed to be given in the above instrument of May 10th, the defendant has advertised the land of A. W. Coleman, deceased, for the purpose of raising money to pay his debts and the legacy of two thousand dollars to Laura Cooper. The plaintiff denies that said instrument is a will, or that she had any notice of its being offered for or admitted to probate, and insists that the land belongs to herself and her brother and sisters as the heirs of their deceased brother, and alleges that assets sufficient to pay all the decedent's debts and the two thousand dollars to Laura Cooper, provided it has to be paid, went into the hands of Mark Coleman, administrator and further, that soon after the death of her brother, an arrangement was entered into between all of the said heirs and their father (the administrator) to the effect that the said heirs should raise the amount directed to be paid to Laura Cooper, and thereby avoid a sale of the land; and that in pursuance thereof she paid to said administrator her ratable part of the amount, to wit, five hundred dollars, and immediately thereafter entered into possession of her part of the land which she has enjoyed for nearly seventeen years. The defendant denies that the assets which came to the hands of Mark Coleman, the administrator, were sufficient to pay the said debts, and much less to pay the sum directed to be paid to Laura Cooper. He insists that the instrument of May 10th is a will, and upon his right to sell the land

thereunder to raise the amount necessary to pay the said debts and legacy of two thousand dollars; and he further says that if any such arrangement was made between the administrator and his heirs, as alleged by plaintiff, it was a mere verbal one and therefore void, and that he has no information whether or not the plaintiff had notice of the propounding of said instrument for probate.

The plaintiff's motion was for an injunction to restrain the defendant from selling the land of A. W. Coleman until proper accounts might be taken of the assets which came into the hands of his two administrators and of the amounts paid by the heirs towards the legacy of Laura Cooper. The order as granted by His Honor enjoined the sale until the final hearing of the case, and from it the defendant appealed.

*Messrs. Gilliam & Gatling*, for plaintiff.
No counsel for defendant.

RUFFIN, J. By the act of 1879, ch. 63, entitled " an act defining the jurisdiction of judges of the superior courts as to granting injunctions and restraining orders, &c.," it is provided that all restraining orders granted by any of the judges shall be made returnable before the resident judge of the district, or the judge assigned to the district, or holding by exchange the courts of the district in which the action may be depending.

It is perfectly manifest that this statute, with a view to prevent the inconvenience of parties, intended to fix the place where rather than the persons before whom such orders should be made returnable, and that the judges were denominated in the order in which we find them because it was supposed that one or the other of them would at all times be within the district of the action.

As the inconvenience, resulting from an order requiring his attendance in Raleigh to the defendant living in the

ninth judicial district and having an action there pending against him, could be lessened by the consideration that the matter was to be heard by one who happened to be the judge of his district, it cannot be that an order so returnable is within the contemplation of the statute. If it turn out that neither one of the judges indicated is in place when the order should be returned, (as we can well see may sometimes happen owing to the inequality in the duration of terms of court in several of the districts, and as really did happen in this instance from that very cause) then it is simply a case not provided for under the statute, and such as no judge has within himself the power or right to provide for. It was an error therefore in His Honor to have made his first order, restraining the defendant, returnable at a point outside the district in which the action was pending; and if the defendant had relied on that circumstance and taken his exception in apt time, he would have been entitled to have the order set aside on that ground. But it was a case of mere irregularity, and not of any failure of jurisdiction in the court, and like every other irregularity could be waived; and we are of the opinion that by filing his counter-affidavits going fully so the merits of the case, and by allowing His Honor after full notice of the time and place to hear and determine the motion upon the merits as disclosed in the affidavits of the parties without once raising a question as to the regularity of the proceeding, the defendant in this case did waive all subsequent right of objection on that account. For this reason alone the defendant's motion made first in this court to vacate the order of injunction on the ground of irregularity, is denied, without our stopping to inquire whether, since the first order expired by force of its own terms on the 14th of July, the cause did not stand before His Honor on the 27th just as if no such order had ever been granted, or how far the power of the judges of the state to grant injunctions

without notice has been affected by the legislation since the Code.

Looking too to the facts as alleged and admitted by the parties in their affidavits, we think the defendant has no cause to complain of the action of the court in restraining the sale of the land until the rights of the parties could be fairly heard and passed upon. Apart from the questionable character of the instrument itself, claimed to be the will of the deceased, Coleman, it appears from the record to have been offered for probate wholly without notice to the heirs, and to have been admitted upon proof altogether insufficient for the purpose. It does not even appear that the witnesses who testified to its being in the handwriting of the deceased, qualified themselves to do so by showing that they had a previous acquaintance with his handwriting; nor do we know when or in whose hands the instrument was found after the death of the party, and being a holograph will, if a will at all, these all became matters of interest. It may be that in fact every demand of the law was complied with and the action of the clerk in admitting the instrument to probate as a will, fully justified by the evidence before him. If so, it was the folly of the defendant not to have made it clear to the court. There is no room for the maxim *omnia præsumuntur rite esse acta* in a case like this in which a paper after being so many years suppressed is offered and admitted to probate without notice to the parties interested. Again, there have been two administrators upon the estate of the deceased and the account of neither has been settled. It is admitted that some assets went into the hands of the first and the parties differ as to the amount. It is the right of the heirs to have this question settled before their land should be sold.

The order continuing the injunction until the trial of the action is affirmed. Let this be certified.

No error. Affirmed.